## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CALVIN MAYFIELD,**

       **Plaintiff,**

**v.**

**Case No. 24-cv-01869-SPM**

**DAVID MITCHELL,**
**MAC SHANE FRANK,**
**CHRISTINE GOLDMAN,**
**RACHEL AGUINIGA, and**
**MS. EDWARDS,**

       **Defendants.**

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Calvin Mayfield, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center (Pinckneyville), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Plaintiff alleges that Defendants have conspired to retaliate against him for suing Defendant Warden Mitchell, filing complaints with the governor regarding "numerous issues" at Pinckneyville, and submitting grievances. Specifically, Defendants have held legal mail – discovery for another civil case, recalculated his sentence, and refused to document earned program sentence credits (EPSC) in his master record.

Page 1 of 11

Plaintiff states that he was transferred to Pinckneyville in September 2021. (Doc. 1, p. 10). Since his arrival, he has experienced several problems and has written the governor's office multiple letters. (*Id.* at p. 11). In one of the letters, Plaintiff expressed his belief that Defendant Christine Edwards, the mailroom supervisor, or her staff was stealing from him by charging him excess postage. Based on his letters to the governor, a grievance was reversed from denied to affirmed, and he was refunded the money he was overcharged for postage. (*Id.* at p. 12). Plaintiff also has complained about his confinement at Pinckneyville by initiating a civil case in federal court, *Mayfield v. Loos,* No. 23-cv-01642 (S.D. Ill. *filed* May 15, 2023), in which Warden Mitchell is named as a defendant.

In addition to *Mayfield v. Loos,* Plaintiff is currently prosecuting the case *Mayfield v. Woodward,* No. 22-cv-03200 (C.D. Ill. *filed* Sept. 28, 2022). (Doc. 1, p. 10-11). In *May field v. Woodward,* Plaintiff alleges that while he was at Western Illinois Correctional Center, staff failed to protect him from being attacked by his cellmate. (*Id.* at p. 11). In an effort to collect evidence in that case, Plaintiff sent two "FOIA requests" to the Brown County State's Attorney's Office for copies of video surveillance footage and footage of a recorded interview, one in April 2023 and the other in June 2023. (*Id.* at p. 13). Plaintiff did not receive the DVD's. On September 12, 2023, the Brown County State's Attorney's Office informed him that in response to his FOIA requests they sent him eleven DVD's on May 8, 2023, and six DVD's on June 16, 2023. (*Id.*). Plaintiff believes that upon receipt of the DVD's at the facility, the DVD's would have passed through the mailroom supervisor, Defendant Christine Edwards, to the litigation coordinator, Defendant Rachel Aguiniga, then to the internal affairs lieutenant, Defendant Mac-Shane Frank. (*Id.* at p. 15). That same day, September 12, Plaintiff sent a letter to Edwards asking if the DVD's were ever delivered to the facility. Edwards responded, "as of 9-15-23 all mail received has been distributed to all cell houses." (*Id.*).

Page 2 of 11

On September 25, 2023, Plaintiff filed a grievance about the DVD's. (Doc. 1, p. 17). He received a response two days later, informing him that the internal affairs unit had the DVD's and that he, Plaintiff, would need to send a request to the internal affairs unit to view them. (*Id.*). Plaintiff states that he had previously written to Frank twice about the DVD's and did not receive a response. (*Id.* at p. 18). On September 25, 2023, Plaintiff also wrote a letter to Warden Mitchell and Frank about his difficulties receiving his legal mail. (*Id.* at p. 18-19).

On September 29, 2023, Plaintiff was called to the internal affairs unit and spoke to Frank and Correctional Officer Vonn. (Doc. 1, p. 19). During the meeting, Frank called Plaintiff an "equal opportunity pain in the ass," and informed Plaintiff that "writing letters and filing grievances wont help [him] watch the DVD's." (*Id.* at p. 19).

On October 6, 2023, Plaintiff received a sentence calculation sheet and a memo regarding the "earned program sentence credits" (EPSC) from Defendant Christine Goldman, the record office supervisor. (Doc. 1, p. 20). He states that his sentence was recalculated so that his "outdate" was changed from 2036 to 2040. (*Id.* at p. 21). Furthermore, the memo stated that because he was not enrolled in a sex offender treatment program, he could not be awarded his earned program sentence credits. The memo did not include a statement that his earned program sentence credits would still be documented and added to his master record, even though he was ineligible for the award. (*Id.* at p. 50). This memo differed from previous memos that found him ineligible for earned program credits because if awarded, his sentence would be reduced to below 85% of his time served, contrary to statute, but still noted that the days of "successful program participation" would be documented and added to his master record. (*See Id.* at p. 54). Plaintiff believes that Goldman recalculated his sentence and refused to note his earned program sentence credits in his master record in conspiracy with Frank and Mitchell as an act of retaliation for Plaintiff naming Mitchell in a lawsuit and lodging complaints. (*Id.*).

On October 14, 2023, a third package of discovery arrived at the facility for Plaintiff from the Brown County State's Attorney's Office. (Doc. 1, p. 25). Again, Plaintiff was not notified that the package had arrived. On November 14, 2023, Plaintiff spoke with Aguiniga and asked about the DVD's, but "she made no mention of them during [their] interaction." (*Id.* at p. 16-17).

## DISCUSSION

Based on the allegations and Plaintiff's articulation of his claims in the Complaint, the Court designates the following counts:

> **Count 1:** First Amendment claim against Mitchell, Frank, Goldman, Aguiniga, and Edwards for retaliating against Plaintiff for filing lawsuits, complaint letters, and grievances.
>
> **Count 2:** Fourteenth Amendment equal protection claim against Mitchell, Frank, and Goldman.
>
> **Count 3:** Claim against Mitchell, Frank, Aguiniga, and Edwards for conspiring to retaliate against Plaintiff by withholding Plaintiff's legal mail.
>
> **Count 4:** Claim against Goldman, Frank, and Mitchell for conspiring to retaliate against Plaintiff by recalculating his sentence and failing to record his EPSC in his master record.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

## Count 1

Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing lawsuits about their conditions of confinement. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009)).

The Court will allow Count 1 to proceed against Frank, Edwards, and Aguiniga for retaliating against Plaintiff by withholding his legal mail – the discovery DVDs – on three separate occasions. Plaintiff states that his legal mail would have at some point passed through the offices of all three Defendants and that none of the individuals contacted him regarding the receipt of the DVDs when they arrived in May, June, and October 2023. He either spoke or contacted all three individuals about the DVDs but still had to write letters and grievances in order to be informed that they had reached the facility and to be able to view them. When he finally met with Frank to view the first two set of DVDs, Frank called him a "pain in the ass" and told him that writing grievances would not help him watch the DVDs. (Doc. 1, p. 19). These allegations are sufficient to state a retaliation claim based on Plaintiff's filing of grievances, complaints, and lawsuits. *See Higgs v. Carver,* 286 F. 3d, 439 (7th Cir. 2002) (discussing the standard for pleading retaliation claims).

Count 1 is dismissed to the extent Plaintiff is claiming that Frank, Aguiniga, and Edwards retaliated against him by having his sentence recalculated and his EPSC not recorded in his master record. There are no allegations to support the conclusion that Frank, Aguiniga, and Edwards had any involvement in his resentencing or good time credit calculations. *See Walton v. Walker,* 364 F. App'x 256, 258 (7th 2010) (citing *Aschroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Count 1 is also dismissed as to Mitchell and Goldman. Plaintiff states that because he complained about Warden Mitchell in letters to the governor and filed a civil suit naming Mitchell as a defendant, Mitchell retaliated against him by recalculating his sentence, deciding to no longer

Page 5 of 11

record his days of successful program participation in his master record, and withholding his mail on three separate occasions. (Doc. 1, p. 28). This allegation is not sufficient to state a First Amendment claim against Mitchell. Plaintiff fails to plead any facts from which the Court can plausibly infer that Mitchell was involved in the described deprivations – sentence recalculation, failure to record EPSC, and withholding of mail. In fact, based on the timeline of events as described by Plaintiff, it appears that Mitchell assisted in Plaintiff viewing the DVDs, not withholding them. After Plaintiff wrote a letter to Mitchell complaining about not receiving the DVD's, a few days later he was scheduled to meet with Frank to view them. (Doc. 1, p. 19). Plaintiff's conclusory statement that Mitchell retaliated against him is based on mere speculation. *Sanders v. Bertrand,* 72 F. App'x 442, 445 (7th Cir. 2003) (dismissing retaliation claim at merit review where the plaintiff's retaliation claim rested "only on personal beliefs that cannot be substantiated"); *Santiago v. Anderson*, 496 F. App'x 630, 633–34 (7th Cir. 2012) ("[Plaintiff's] premise—that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice pleading."). Accordingly, Count 1 is dismissed as to Warden Mitchell.

Likewise, there are insufficient facts pled to support a retaliation claim against Goldman. Plaintiff claims that his sentence was recalculated and his EPSC were not included in his master record after writing complaint letters and speaking to Frank about the DVDs. (Doc. 1, p. 21). He was informed of these changes in letters written by Defendant Goldman, the record office supervisor. Again, Plaintiff provides no facts from which the Court can plausibly infer that Goldman was aware that Plaintiff was lodging complaints about various issues at Pinckneyville and acted with retaliatory animus. In fact, when he wrote a grievance about his EPSC, the error was corrected. The record office responded to the grievance stating that Plaintiff's "good time has always been documented in [his] master record" and that an amended memo would be sent stating

Page 6 of 11

that "it has been added to [his] master record." (Doc. 1, p. 57). Accordingly, Count 1 is dismissed as to Goldman.

## Count 2

The Equal Protection Clause prohibits the singling out of a person for different treatment for no rational reason. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff claims that Frank and Mitchell violated the Equal Protection Clause by conspiring to recalculate his sentence, no longer documenting his EPSC, and withholding his mail on three different occasions. As stated above, there are no facts from which the Court can reasonably infer that Mitchell had any involvement in Plaintiff's mail, the recalculation of his sentence, or the recording of his EPSC. Count 2 is dismissed as to Mitchell.

Likewise, there are no facts supporting the conclusion that Frank was involved in the recalculation of Plaintiff's sentencing and the recording of EPSC. Count 2 is therefore dismissed as to Frank regarding Plaintiff's claims that he was treated arbitrarily by Frank regarding his sentence change and EPSC.

Count 2 will proceed against Frank as to Plaintiff's claims that Frank treated him differently out of personal dislike for Plaintiff by intentionally withholding his legal mail and preventing him from viewing it.

Plaintiff also asserts that Goldman violated the Equal Protection Clause by failing to document his EPSC in his master record and recalculating his sentence. (Doc. 1, p. 27-28). Plaintiff provides an example of another inmate who continued to receive EPSC memos stating that the inmate's EPSC would be recorded in his master record, while Plaintiff's memo omitted this

statement. However, Plaintiff has failed to plead facts to suggest that he was *intentionally* treated differently by Goldman regarding the recording of the EPSC. As mentioned, Plaintiff's exhibits state that the failure to include the statement that his EPSC would be recorded in his master record was rectified, and the memo was resent with this language added. Regardless of whether the statement was included in the memos, the record office informed Plaintiff that his "good time has always been demounted in [his] master record." (Doc. 1, p. 57). Thus, Plaintiff has failed to state an equal protection claim for the failure to document his EPSC in his master record.

As for Plaintiff's sentence recalculation, he does not assert that he has been intentionally treated different from other similarly situated inmates as would be required to plead a class of one claim. *United States v. Moore,* 543 F.3d 891, 896 (7th Cir. 2008). Count 2 is dismissed as to Goldman.

### Counts 3 and 4

Civil conspiracy claims are cognizable under Section 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Furthermore, conspiracy is not an independent basis of liability in Section 1983 actions. *See Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir.1996). Thus, for Plaintiff's conspiracy claim to actionable, there must be some cognizable underlying constitutional violation.

Count 3 will proceed against Frank, Aguiniga, and Edwards, but is dismissed as to Mitchell. As discussed above, Plaintiff has not alleged any facts to support Mitchell's involvement

Page 8 of 11

in the withholding of Plaintiff's mail or retaliatory conduct.

Because Plaintiff has failed to state a claim of a constitutional violation regarding his sentence recalculation and the failure to record EPSC in his master record against the named defendants, Count 4 is dismissed.

### OFFICIAL CAPACITY CLAIMS

Plaintiff states that he is suing Defendants in both their official and individual capacities. (Doc. 1, p. 10). However, because he is seeking only monetary damages, the official capacity claims directed against the remaining defendants are dismissed with prejudice. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

### DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Frank, Aguiniga, and Edwards but is **DISMISSED** as to Mitchell and Goldman. **COUNT 2** will proceed against Frank but is **DISMISSED** as to Mitchell and Goldman. **COUNT 3** will proceed against Frank, Aguiniga, and Edwards but is **DISMISSED** as to Mitchell. **COUNT 4** is **DISMISSED.** Because there are no surviving claims against Mitchell and Goldman, the Clerk of Court is **DIRECTED** to terminate them as defendants.

The Clerk of Court **SHALL** prepare for Frank, Aguiniga, and Edwards the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal

Page 9 of 11

service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 18, 2024**

           *s/Stephen P. McGlynn*
           **STEPHEN P. MCGLYNN**
           **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.